UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ERIC A. BOYD**
        **Petitioner,**

v.                         **Case No. 09-C-0290**
                               **(Criminal Case No. 94-CR-52)**

**UNITED STATES OF AMERICA**
        **Respondent.**

## DECISION AND ORDER

In June of 1994, a jury convicted petitioner Eric Boyd of three counts of armed bank robbery, 18 U.S.C. § 2113, and three counts of use of a firearm during a crime of violence, 18 U.S.C. § 924(c), and Judge Thomas Curran sentenced him to a total of 650 months in prison. The Seventh Circuit affirmed petitioner's convictions on direct appeal on June 14, 1996, United States v. Boyd, 86 F.3d 719 (7th Cir. 1996), and the Supreme Court denied certiorari on May 19, 1997, Boyd v. United States, 520 U.S. 1231 (1997).

On March 16, 2009, petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Judge Curran having retired, the matter was re-assigned to me. I screened the motion pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, ordered the government to file a response, then permitted petitioner to reply. I now deny the motion as untimely.

**I.**

Section 2255 permits a federal prisoner to attack his sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In this case, petitioner argues that his trial lawyer provided ineffective assistance of counsel by failing to present testimony from an alibi witness, Yoka Slaughter, who now indicates in a sworn declaration that petitioner was with her when two of the robberies were committed. Petitioner claims that he told his trial counsel about Slaughter, but counsel failed to interview her or present her testimony at trial.

A lawyer's failure to present exculpatory testimony may violate a defendant's Sixth Amendment rights, see, e.g., Washington v. Smith, 219 F.3d 620, 629-31 (7th Cir. 2000), and ineffective assistance of counsel claims may be presented for the first time under § 2255, see Massaro v. United States, 538 U.S. 500, 504 (2003).[1] Petitioner's trial counsel, now retired and living in another state, indicates that he has no recollection of these events and no file or notes to refresh his recollection as to whether petitioner provided him with information on the alibi witness or why he otherwise did not call her at trial.

But this points up the problem with petitioner's motion; his conviction has been final for over a decade. A one-year limitation period applies to § 2255 motions, running from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[1] Petitioner faults his appellate lawyer for not raising the issue of trial counsel's performance, but because ineffective assistance claims need not be raised on direct appeal I need not further discuss the issue of appellate counsel's performance.

2

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Petitioner invokes § 2255(f)(4), arguing that he was only recently able to locate Slaughter and could not file his motion until he did so.

While § 2255(f)(4) does not require the prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, it does at least require that he make reasonable efforts to discover the facts supporting his claims. See Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008). I cannot conclude that petitioner did so here.

**II.**

Petitioner states that he tried to contact Slaughter through his brother, Gary Boyd, who went to Slaughter's apartment but found that she no longer lived there. With no money to hire an investigator, he then relied on his mother, Mary Boyd, to find Slaughter by periodically phoning an information service. Her attempts to locate Slaughter in this fashion started in the winter of 1997, and she made her last unsuccessful attempt in November or December 2007.

Petitioner states that he also enlisted the help of his friend Macio Lindsey to find Slaughter, but he too was unsuccessful. In his declaration, Lindsey indicates that he met petitioner in prison in March 2003. After petitioner told him about Slaughter, Lindsey enlisted his girlfriend and sister to conduct internet and telephone information searches. Lindsey indicates that because of their work and school schedules, the two women "could not conduct an isolated and exhaustive search" for Slaughter, and that their attempts were "sporadic, yet consistent." (Motion Ex. C ¶ 6.) Lindsey states that these efforts spanned from June 2003 to

3

December 2007.

Petitioner indicates that in March 2008 his brother Gary fortuitously encountered Slaughter at the Grand Avenue mall. Gary asked Slaughter if she would sign an affidavit indicating that petitioner was with her at her apartment when the banks were robbed, and she agreed. In her declaration, Slaughter states that petitioner was with her from about 2:30 a.m. until noon on December 17, 1993, and from about 1:30 a.m. until noon on January 27, 1994, the dates of two of the robberies. Petitioner contends that Slaughter's testimony could have altered the outcome of the case, as the bank witnesses did not get a good look at the robber, who wore large sunglasses and a hood, and the government failed to present physical evidence linking him to the crimes. Finally, petitioner contends that he has established reasonable delay in filing the motion based on the need to locate Slaughter.

The government argues that it was not necessary for petitioner to locate Slaughter in order to file the motion; the facts supporting his claim – that petitioner told counsel about this witness, yet counsel failed to investigate – were known to petitioner in 1996-98, and petitioner does not allege that he lacked access to the federal courts during those years. Had petitioner timely filed the motion, the court could have held an evidentiary hearing while counsel's memory was fresh and assessed his reasons for not calling Slaughter. Had it concluded that her testimony was relevant, the court could have appointed counsel for petitioner to assist in locating and subpoenaing Slaughter. Instead, petitioner waited twelve years after his conviction became final (and nearly a year after his brother ran into Slaughter),[2] during which

---

[2] In his reply brief, petitioner states that he did not file his § 2255 motion immediately after locating Slaughter because he was investigating a third-party confession to two of the robberies. However, he was unable to obtain a declaration from the person to whom the third-party allegedly confessed.

4

time counsel's memory faded and his files were apparently destroyed.

Although petitioner could have filed his claim in 1997-98, without an affidavit from Slaughter, it may not have survived Rule 4 screening. The Seventh Circuit has long held that in order to establish prejudice based on counsel's failure to investigate, the defendant must make a comprehensive showing of what the investigation would have produced and how the results could have aided his defense. See, e.g., United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002); United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995); United States v. Olson, 846 F.2d 1103, 1109-10 (7th Cir. 1988). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted); see, e.g., Vasquez v. United States, No. 08-C-664, 2008 WL 4830799, at *2 (E.D. Wis. Oct. 28, 2008) (denying without a hearing an ineffective assistance claim based on failure to call an alibi witness, where the claim was based only on the petitioner's say-so).

The government argues in the alternative that even if locating Slaughter was necessary petitioner could have done so in the exercise of due diligence much earlier than 2008. I agree. While the circumstances of petitioner's confinement, and his family's lack of resources, may have limited his ability to investigate, see Montenegro v. United States, 248 F.3d 585, 592 (7th Cir. 2001), overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001), sporadic internet searches and calls to information over the course of a decade do not constitute due diligence. As the government notes, petitioner did not attempt to correspond with Slaughter by mail, something he could have done personally despite his confinement.

5

Even if Slaughter had moved, the postal service could have forwarded his letters.[3] Nor did petitioner or those acting on his behalf make any effort to locate Slaughter through her family, friends or employer; it is difficult believe that someone intimate enough with Slaughter to spend the night at her apartment – according to Slaughter's declaration, arriving in the middle of the night and awakening her both times – would know nothing of her associations.[4] Petitioner and his assistants also failed to inquire of Slaughter's landlord or other tenants in her building where she had gone.

Finally, as the government also notes, court records, including from this district, provide information on Slaughter's whereabouts. She filed for bankruptcy in the Eastern District of Wisconsin in 1998, Case No. 98-27782, providing an address of 5208 North 27th Street in Milwaukee. That same year, she filed a civil lawsuit in Milwaukee County Circuit Court, Case No. 1998-CV-000211, listing the same address.[5] The government indicates that according to Accurint, a public records data base, Slaughter lived at 5208 North 27th Street from 1995 to

---

[3] In his reply brief, petitioner contends for the first time that after his brother Gary discovered that Slaughter had moved, he (petitioner) gave Slaughter's old address to another brother, Andre Wilson, and asked Wilson to send a letter to that address hoping it would be forwarded, but it was returned to Wilson. Petitioner states that he has tried to find the letter but could not do so. Petitioner presents no proof of these additional facts, in the form of an affidavit from Wilson or otherwise.

[4] In his reply brief, petitioner agrees that knowledge about Slaughter's family or associates could have helped find her, but he states that their relationship was in the incipient stage at the time of his arrest. But even those at the beginning of a relationship are likely to know something about one another. Petitioner also made no effort to reach Slaughter by contacting others with her last name. The government indicates that it appears Slaughter has relatives in Milwaukee, including some who share her last name.

[5] I may take judicial notice of these court filings. See General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081-82 (7th Cir. 1997). In his reply, petitioner argues that he should not be penalized because he and his family lacked the skills of a trained investigator. But it does not take a trained investigator to check public records.

6

2006. Given the limited efforts set forth in petitioner's papers, and the relative ease with which this allegedly critical witness could have been located through public records, I find that petitioner did not exercise due diligence.

Petitioner argues that equitable tolling should apply, but such an argument adds nothing here; § 2255(f)(4) is itself a kind of tolling rule. See Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000). Further, the Seventh Circuit has held that equitable tolling is reserved for extraordinary circumstances far beyond the litigant's control that prevent timely filing; the court of appeals has yet to identify a circumstance that justifies equitable tolling in the collateral relief context. Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004). Petitioner presents no such circumstances; for the reasons set forth above, petitioner could have filed his motion sooner in the exercise of due diligence.[6]

**III.**

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED** as untimely, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of August, 2009.
/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[6]Petitioner argues "actual innocence" as a separate ground for relief, stating that his lawyer's failure to present Slaughter's testimony has probably resulted in the conviction of an innocent person. A claim of actual innocence is not a freestanding exception to the time limits for habeas actions. See Araujo v. Chandler, 435 F.3d 678, 681 (7th Cir. 2005); Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005). Petitioner must still show that he was reasonably diligent in presenting the claim. See Gildon v. Bowen, 384 F.3d 883, 887 (7th Cir. 2004). Finally, petitioner presents no basis for concluding that § 2255 is inadequate or ineffective to press the claim. See Cooper v. United States, 199 F.3d 898, 901 (7th Cir. 1999). A petitioner's failure to follow statutory requirements does not make § 2255 inadequate or ineffective. See Unthank v. Jett, 549 F.3d 534, 535-36 (7th Cir. 2008).